IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WANDA BENALLY,

    Plaintiff,

vs.　　　　　　　　　　　　　　　　　　　　　　　Civil No. 02-1064 WJ/WDS

BHP BILLITON LTD.,

    Defendant.

## MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION TO DISMISS

THIS MATTER comes before the Court upon a Motion to Dismiss, filed by Defendant San Juan Coal Company ("Defendant") on November 12, 2003 **(Doc. 19)**.[1] Defendant seeks dismissal of Plaintiff's claims on jurisdictional grounds. Having considered the parties' submissions and the applicable law, I find that Defendant's motion is well-taken in part and will be granted in part, and is not well-taken in part and will be denied in part.

### BACKGROUND

At the time the Complaint was filed, Plaintiff was employed by Defendant as a maintenance utility worker. In Count I, Plaintiff alleges that Defendant violated her rights under Title VII,[2] by refusing her opportunities for training and promotions based on her gender and race as a female Native American and by creating an intimidating work environment. Counts II and III

---

[1] On March 7, 2003, the Court granted the parties' unopposed motion to substitute San Juan Coal Company for BHP Billiton Limited. Plaintiff was employed by San Juan Coal Company, which is a subsidiary of BHP Billiton Limited. See Doc. 7.

[2] 42 § U.S.C.A. 2000e to 2000e-17.

assert claims of Breach of Contract, and Breach of Implied Covenant of Good Faith and Fair Dealing. Defendant contends that Plaintiff's Title VII claims are untimely because they were filed more than 90 days after Plaintiff's receipt of her "right to sue" letter. Defendant further contends that the claims brought under breach of contract and breach of implied are preempted by § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. §185(a), because a collective bargaining agreement exists between the parties which must be analyzed in order to resolve Plaintiff's claims under state law.

**Legal Standard**

Defendant relies on Fed.R.Civ.P. 12(b)(1) as a basis for dismissal. A party may go beyond the allegations contained in the complaint and challenge the facts upon which jurisdiction depends. Sizova v. National Institute of Standards & Technology, 282 F.3d 1320, 1324-25 (10th Cir. 2002); Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995). A Rule 12(b) motion to dismiss can challenge the substance of the complaint's jurisdictional allegation in spite of its formal sufficiency by relying on affidavits or any other evidence properly before the court. Sizova, 282 F.3d at 1324-25; New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495 (10th Cir. 1995). A court has wide discretion to allow affidavits or other documents to resolve disputed jurisdictional facts under Rule 12(b). In such instances, a court's reference to evidence outside the pleadings does not necessarily convert the motion to a Rule 56 motion. Sizova, 282 F.3d 1324-25; Holt, 46 F.3d at 1003. Materials that are "referred to" in the plaintiffs' complaint and which are "central to the plaintiffs' claim" may be considered part of the pleadings for the purpose of a Rule 12(b) motion. See Greenberg v. Life Ins. Co. of Virginia, 177 F.3d 507, 514 (6th Cir.1999) (referring to CBA); Pension Ben. Guar. Corp. v. White Consol. Pension Ben. Guar.

Corp. v. White Consol. Industries, Inc. 998 F.2d 1192 (3rd Cir. 1993) (holding that court may consider an undisputedly authentic document, e.g., a purchase and sales agreement, that a defendant attaches as an exhibit to a motion to dismiss, if the plaintiff's claims are based on the document) (citing Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir.1996) (court may consider a "document integral to or explicitly relied upon in the complaint" without converting the motion into one for summary judgment)).

Defendant attached a copy of the collective bargaining agreement ("CBA") between the Defendant and Plaintiff's union (the International Union of Operating Engineers, Local 953), and an affidavit which states that Plaintiff is a member of that union. While the Complaint itself does not explicitly mention the CBA, it nevertheless makes unmistakable references to contracts and written representations made by the Defendant that it would provide Plaintiff with a work environment free from discrimination, harassment and hostility. See Complaint, ¶ 32 (representation made to Plaintiff "verbally [and] in writing").  These representations are at the core of Plaintiff's allegations of discrimination and breach.  Plaintiff's response includes attachments of other documents upon which it allegedly bases its state law contract claims: United Nations Universal Declaration of Human Rights, utilized by Defendant's Human Resources, General Rules of Conduct, Defendant's Equal Employment and Opportunity Agreement, and the Native American Professional Development Program.  Pltff's Ex. 3.

Plaintiff does not dispute the existence or authenticity of the portions of the CBA selected by Defendant for submission to the Court. Nor does Plaintiff deny her participation in the CBA, or that the agreement was in effect during the time relevant to the allegations in the Complaint. Therefore, the Court's review and consideration of the CBA does not transform Defendant's

Motion to Dismiss into a Rule 56 motion.

## DISCUSSION

**I.	Count I - Title VII**

Plaintiff filed her Complaint on August 23, 2002. Defendant contends that this Court lacks jurisdiction over Plaintiff's Title VII claim because it was filed 92 days after receipt of the Notice of the Right to Sue issued by the Equal Employment Opportunity Commission ("EEOC"). See Witt v. Roadway Express, 136 F.3d 1424 (10th Cir. 1998) (In order to be timely, a claim under Title VII must be filed within 90 days of the claimant's receipt of a right-to-sue letter); 42 U.S.C. § 2000e-5(f)(1).

Plaintiff concedes the obvious -- the Complaint asserts that the Notice of the Right to Sue was received from the EEOC on May 23, 2002 -- but states that this is a clerical error, and that May 23, 2002 was the date the notice was mailed out from the EEOC, not when it was received. A copy of the notice attached to the response does have a "date mailed" stamp of May 23, 2002. According to an affidavit attached to the response, the receptionist at the office of Plaintiff's counsel date-stamped Plaintiff's Dismissal and Notice of Rights on May 28, 2002. Ex. 2. Plaintiff requests that the Court allow her to amend the Complaint to include the correct date of receipt, and thereby, the timeliness of the Title VII claim.

Defendant takes issue with the receptionist's affidavit, contending that those statements only serve to show that the document was *date stamped* at counsel's office on May 28th, 2002, and do not necessarily mean that the notice arrived by mail at either counsel's office or that the

4

receptionist actually opened the letter on that date.[3]  This is quibbling with the matter. Defendant would have to concede that a letter mailed from the EEOC office on May 23, 2002 requires at least two days to reach the office of Plaintiff's counsel.  Thus, a date of actual receipt at counsel's office anytime after May 25, 2002 would render the Complaint timely.

I certainly agree with Defendant that Plaintiff should have moved to amend before now. In its Answer, filed nine months before Plaintiff's response to the present motion, Defendant denied Plaintiff's contention that the Complaint was filed within 90 days of the receipt of the Notice of Right to Sue.  See, Answer,¶ 3.  Untimeliness can be a sufficient reason to deny leave to amend particularly when a movant provides an adequate explanation for the delay.[4] Panis v. Mission Hills Bank, N.A., 60 F.3d 1486 (10th Cir. 1995) (citation omitted). Plaintiff has provided an adequate explanation here.[5]  Where a party "seeking the amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." See, Panis v. Mission Hills Bank, N.A., 60 F.3d 1486 (10th Cir. 1995) (citing State Distributors, Inc. v. Glenmore Distilleries Co.,

---

[3] The date for receipt of the notice is triggered when it is received, not when it is opened and examined.  Million v. Frank, 47 F.3d 385 (10th Cir. 1995); Witt v. Roadway Express,136 F.3d 1424 (10th Cir. 1998).

[4] Defendant paraphrases Panis as stating that "untimeliness alone *is* a sufficient reason to deny leave to amend" (emphasis added), which is a harsher standard.

[5] Whether Plaintiff did not anticipate Defendant's moving to dismiss the claim on the basis of untimeliness, or whether Plaintiff did not carefully read the Answer, the Court will not penalize Plaintiff for these oversights.  I note, however, that Plaintiff's inattention to detail is demonstrated elsewhere.  For example, Plaintiff refers to an "attached  Exhibit A" in § 3 of the Complaint, which is not attached to either the original pleading or chamber's copy.  The Court eventually has the benefit of the document when it surfaces as an exhibit attached to the response to Defendant's motion to dismiss as Exhibit 1.

738 F.2d 405, 416 (10th Cir.1984)). On these particular circumstances, denying Plaintiff's request to amend the Complaint because of nothing more than a clerical error seems draconian. I decline to use my discretion to deny the request without a showing by Plaintiff of undue prejudice to Defendant, bad faith, dilatory motive, or futility of amendment. See First City Bank v. Air Capitol Aircraft Sales, 820 F.2d1127, 1132 (10th Cir. 1987). Such conduct has not been shown. Therefore, Plaintiff will be allowed to file an amended Complaint to reflect the correct date of receipt of the Notice of the Right to Sue.

## II.     Preemption under the LMRA

Defendant next argues that Plaintiff's claims in Counts II and III (Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing) are preempted by the § 301 of the Labor Management Relations Act of 1947 ("LMRA"), because resolution of those claims are substantially dependent upon an analysis of the terms of the collective bargaining agreement between Defendant and Plaintiff's union ("CBA").   Section 301 of the Labor Management Relations Act of 1947 ("LMRA") states that:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). A state law claim is preempted by § 301 of the LMRA if its resolution "depend upon the meaning of a collective-bargaining agreement." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-06 (1988); Steinbach v Dillon Companies, Inc., 253 F.3d 538, 539 (10th Cir. 2001). If, however, the state law claim is not substantially and inextricably intertwined with the CBA, that claim is independent and is not preempted. Lingle, 486 U.S. at 407; see Allis-

Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985).

Not all contract-related claims are preempted by § 301, even where an individual is party to a CBA. Where a plaintiff alleges breach of an employment contract that arose independently of the union contract, that claim is not preempted. In making a preemption determination, the Court must look at whether the claims are "founded directly on rights created by collective- bargaining agreements," or "substantially dependent on analysis of a collective-bargaining agreement." Caterpillar, Inc. v. Williams, 482 U.S. 386, 394 (1987); see also, Allis-Chalmers Corp., 471 U.S. at 220. Thus, the dispositive question is whether, in order to decide the state-law claims, the Court would need to consult the terms of the CBA that is in place between Defendant and Plaintiff's union. If so, then the claim is preempted by LMRA and is subject to dismissal.

A.   Count I: Breach of Contract

Plaintiff alleges that Defendant breached its employment contract by prohibiting her from attending meetings and training sessions, and by subjecting her to a work environment that was discriminatory and harassing, which included conduct by her supervisor Clifford Yazzie, who "lashed out" at her "without justification." Complaint ¶¶ 32-33.

I need go no further than Defendant's Exhibit 1, which is a copy of the CBA relevant to Plaintiff's employment. Section 12.2 enunciates the agreement between Plaintiff's union and her employer that:

> there will be no discrimination against any person with regard to employment or Union membership because of race, creed, religion, color, sex, age, national origin or ancestry. This shall also apply to hiring, placement, upgrading, transfer, or demotion, recruitment, advertising or solicitation for employment, training during employment, rates of pay or other forms of compensation,, selection for training, layoff or termination. . . ."

Ex. 1, p. 32, § 12.2.  It should be obvious that the CBA is not tangential to Plaintiff's breach of contract claim.  The express language of § 12.2 of the agreement creates the rights which form the basis for Plaintiff's allegations in Count II.  That provision proscribes any conduct which is discriminatory in nature, specifically including conduct applying to training and promotion.  A resolution of Plaintiff's allegations in Count II requires an analysis of what was prohibited conduct or activity set out in the CBA.  See Johnson v. Beatrice Foods Co., 921 F.2d 1015, 1020 (10th Cir. 1990) (allegations relating to manner in which disciplinary measures were carried out related directly to rights derived from CBA); cmp. Albertson's Inc. v. Carrigan, 982 F.2d 1478, 1480 (10th Cir. 1993) (resolution of claims for conspiracy and outrageous conduct, where plaintiff needed to show that defendants conspired to have her arrested by fabricating her theft of groceries from her employer, did not require interpretation of or reference to the CBA).[6]  As a result, I find that Plaintiff's breach of contract claim in Count is "inextricably intertwined" with the CBA and therefore preempted by § 301 of the LMRA.

B.     Count III:  Breach of Implied Covenant of Good Faith and Fair Dealing

Defendant contends that case law construing § 301 requires dismissal of Count III because of the interrelation between Plaintiff's implied contract claim and case law construing preemption under § 301.  The allegations in Count III are similar to those brought under Count II: that Defendant violated an implied agreement with Plaintiff to "give its full cooperation to Plaintiff in

---

[6] Although Plaintiff's allegations are couched in terms of harassing as well as discriminatory conduct, the former is part and parcel as a type of discrimination, which is expressly prohibited by the terms of the CBA. Cmp., Meritor Sav. Bank v. Vinson, 477 U.S. 57, 65 (1986) (Hostile environment sexual harassment is actionable under Title VII's prohibition against sex discrimination).

8

the performance of her duties" and which required that Defendant "refrain from harassing employees or permitting employees to be subjected to discrimination and harassment in the workplace. . . ." The allegations again touch on the denial of opportunities for training and promotion. Complaint, ¶ 37.

As I have explained above, the terms of the CBA govern the resolution of claims alleging discrimination regarding training and promotion. However, Plaintiff argues that other documents besides the CBA afford her rights to an environment free from discrimination, harassment and hostility in the workplace. Thus, Plaintiff's argument goes, the CBA can be used as a factor in determining the existence of an implied contract claim, but is not inextricably intertwined with her claims such that they are preempted by the LMRA. As Plaintiff would have it, these other documents create other contracts or agreements apart from the CBA which would not be subsumed into the CBA, and which should be analyzed separately as the basis for her state law contractual claims. My examination of these documents does not lead to that result.

The United Nations Universal Declaration of Human Rights states that "[a]ll human beings are born free and equal in dignity and rights. . . ," and "[e]veryone is entitled to all the rights and freedoms set forth in this Declaration, without distinction of any kind, such as race, colour, sex, language, religion, political or other opinion, national or social origin. . . ."[7] The Native American Professional Development Program avers Defendant's commitment to "employment, development, promotion and retention of Native Americans. . . ." Defendant's Equal Employment

---

[7] Just as Plaintiff does not dispute either the existence or the authenticity of the CBA, Defendant does not dispute the existence or authenticity of the four documents attached to Plaintiff's response. Defendant's argument is that Plaintiff's state law claims purportedly based on these documents or agreements are preempted by the CBA.

9

and Opportunity Agreement announces the same commitment to Native American Professionals. Finally, Defendant's "Surface and Underground General Rules of Conduct" sets out the company's general harassment policy.

I do not find that these other policies displace or override the CBA, which covers the same issues and objectives stated in those documents. See, e.g., Steinbach, 253 F.3d at 540 (creation of outside employment contract is contrary to the concept of collective bargaining, which is intended to forge an exclusive contract controlling all aspects of the employer-employee relationship). Even if they were construed as documents giving rise to implied contracts, I find that the Court would still be required to analyze the provisions of the CBA in order to resolve those claims, so they would ultimately be preempted under § 301.[8]

Plaintiff offers other cases which are not factually similar, and which therefore cannot support her position. For example, she cites to Garcia v. Sandia Nat'l Laboratories, No. 00-1513, at 7  JP/DJS (Jan. 29, 2001), in which the district court concluded that resolution of Plaintiff's implied contract claim, based on discriminatory conduct by defendant, did not require an interpretation of the CBA. In that case, the court was " unable to identify any provisions which Plaintiffs' implied contract claim might implicate" and noted that defendants never cited to any specific CBA provision. Plaintiff also relies on Sandoval v. New Mexico Technology Group LLC d.b.a. NewTec, 174 F.Supp. 2d 1224, 1234 n.9 (D.N.M. (2001), where the court found no preemption because there was no mention of a collective bargaining agreement. The present case is easily distinguishable from those cases, because here a CBA does exists, and Defendant has

---

[8] I make no findings here relating to the viability of Plaintiff's state law claims on their own merits, i.e., whether these other documents give rise to implied contracts.

pointed to specific provisions in the agreement which bear a direct relationship to those claims. This case is closer to Garley v. Sandia Corp., 236 F.3d 1200 (10th Cir. 2001). Garley alleged that defendant failed to follow the criteria for progressive discipline stated in the employer's code of ethics, personnel policies, and a "Director's Memorandum." The Tenth Circuit determined that plaintiff's claim of breach of implied contract was "inextricably intertwined with consideration of the terms of the labor contract" because those documents were meant to be "read in harmony" with the CBA, which included a separate section for rules governing the discipline of employees; see also, Henderson v. Merck and Co., Inc., 998 F.Supp. 532 (E.D.Pa. 1998) (breach of contract claim based on employer's policy on alcoholism, as outlined in an employee manual, was "sub-issue of the larger inquiry," which required interpretation of CBA which gave Defendant certain "rights and obligations" regarding discharge).

Similarly, Defendant's other policies, viz., the United Nations Universal Declaration of Human Rights, the Native American Professional Development Program, the Equal Employment and Opportunity Agreement, and "Surface and Underground General Rules of Conduct,"are themselves "inextricably intertwined with consideration of the terms of the labor contract." Allis-Chalmers, 471 U.S. at 213; see Cisneros v. ABC Rail Corp., 217 F.3d 1299, 1303 (10th Cir. 2000) (finding that context of defendant's alleged failure to comply with provision in conciliation agreement for continuous service date was essentially a denial of request for vacation, which was an issue relating to seniority as addressed in the labor agreement). Plaintiff's claims in Count III concern whether Defendant's conduct violated the terms of the CBA relating to discrimination. Because Count III ultimately relies on the CBA, they are preempted by § 301.

### III.     Conclusion

I find that Plaintiff's Title VII claim in Count I is not untimely, but Plaintiff is required to amend the Complaint to correct the clerical error pertaining to receipt of the Notice to Sue in order to have accurate factual assertions in the Complaint. I find that the state law claims in Count II and III are "inextricably intertwined" with the CBA and therefore preempted by § 301 of the LMRA.  Dismissal without prejudice is the appropriate disposition for preempted claims where the complaint does not properly plead any claims under the LMRA. See Allis-Chalmers Corp., 471 U. S. at 220-221; Garley, 236 F. 3d 1200, 1215 (10th Cir. 2001).

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Dismiss **(Doc. 19)** is hereby GRANTED IN PART and DENIED IN PART, in that (1) the motion to dismiss is DENIED as to Count I, and (2) GRANTED as to Counts II and III for reasons described above, in that Counts II and III are DISMISSED WITHOUT PREJUDICE;

**IT IS FURTHER ORDERED** that Plaintiff shall file an Amended Complaint which reflects the correct date for the receipt of the Notice of the Right to Sue **on or before Monday, February 16, 2004**.  Plaintiff's counsel is directed to file the Amended Complaint only as to Count I, since Plaintiff's state law claims in Counts II and III have been dismissed herein.

_____
UNITED STATES DISTRICT JUDGE