# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

WANDA BENALLY,

    Plaintiff,

v.                                              Civil No. 02-1064 WJ/WDS

SAN JUAN COAL COMPANY,

    Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court pursuant to Defendant's Motion for Summary Judgment [Docket No. 29]. Having reviewed the submissions of the parties and the applicable law, and after considering the oral arguments of counsel at the hearing on Defendant's Motion for Summary Judgment I find Defendant's motion is well taken and shall be granted.

**BACKGROUND**

At the time Plaintiff filed her Complaint, she was employed by Defendant as a maintenance utility worker. Plaintiff's original Complaint alleged three counts. By Memorandum Opinion and Order filed January 27, 2004, this Court dismissed Counts II and III without prejudice and ordered Plaintiff to amend her Complaint with regard to Count I. Plaintiff filed her Amended Complaint on February 17, 2004. Count I of the Amended Complaint alleges that Defendants violated Title VII by engaging in race and gender discrimination and creating a hostile and intimidating work environment.

Defendant has a collective bargaining agreement (CBA) with the International Union of Operating Engineers Local 953. Plaintiff's employment with Defendant is covered by the CBA. Under the CBA, Defendant is required to maintain a Personnel Qualification File listing employees as qualified or not qualified for job classifications in which they have indicated a desire to perform. The CBA requires that positions be filled by the most senior employee qualified for the position. The CBA also contains a requirement that Defendant give hiring preference to qualified members of the Navajo Tribe. Defendant contends that the Navajo preference requirement in the CBA did not apply to Plaintiff's place of employment. For reasons that are explained below, the Navajo preference in the CBA is not material to Plaintiff's claim under Title VII.

Plaintiff is a qualified member of the Navajo Tribe and female. In May 2001, several employees including Plaintiff filed a grievance with Defendant regarding warehouse position qualifications and training. Plaintiff's grievance specifically stated that she believed she was not being given an equal opportunity to obtain training for warehouse positions.

In June 2001, Defendant responded to the grievance by stating that it had decided not to do any training to qualify additional persons for Partsperson positions, one of the warehouse positions, because there were already two persons qualified and bidding for such positions. Thus, Defendant did not permit Plaintiff to train for a Partsperson position.

In August 2001, a position opened in the warehouse for a Partsperson. Plaintiff applied for the Partsperson position and was denied the position. In order to qualify for the position, an employee had to have worked as a warehouse person full-time for six months and had to score 80% or better on a Partsperson test. Plaintiff was not then qualified for the Partsperson position; she had not worked as a warehouse person for six months and had not taken the test. On

September 6, 2001, Defendant hired an Anglo male to fill the Partsperson position. The person hired to fill the position had less seniority than Plaintiff but was qualified for the Partsperson position at the time he was hired.

On September 12, 2001, Plaintiff filed another grievance with Defendant regarding warehouse positions and stated that the award of the Partsperson position to a person with less seniority than her was a violation of the procedures as she understood them from Defendant's June 2001 response to her May 2001 grievance. She further stated that she wished to be afforded the opportunity given other employees to qualify for warehouse positions.

Plaintiff continued to request opportunities to train for a position as "beltwalker." She was denied this opportunity, but other employees with less seniority were afforded the opportunity to train for the position.

On February 21, 2002, Plaintiff filed a Charge of Discrimination with the New Mexico Human Rights Division and the EEOC. Plaintiff alleged discrimination on the basis of race and gender that occurred on September 20, 2001. Plaintiff's specific allegations stated that 1) Plaintiff applied for the Partsperson position and was not selected for the position; 2) that Defendant's stated reason for not selecting Plaintiff was that she was not qualified and Plaintiff disagrees that she was not qualified; and 3) that Plaintiff believes the reason she was not selected is because she is female and Native American because an Anglo male was selected for the position. Plaintiff's Charge of Discrimination does not allege that Defendant discriminated against her by failing to give her opportunities to train for the Partsperson position. Plaintiff's Charge does not allege a hostile or intimidating work environment.

Defendant filed the instant motion for summary judgment stating that Plaintiff cannot make out a prima facie case of discrimination with regard to Defendant's failure to select her for the Partsperson position because she cannot show that she was qualified for the position. Defendant states further that, even if Plaintiff makes out her prima facie case, Defendant's actions were taken for legitimate, non-discriminatory reasons. Defendant's also urge that Plaintiff's claims for failure to train and hostile work environment are barred by Plaintiff's failure to exhaust such claims.

**LEGAL STANDARD**

Summary judgment is properly regarded not as a procedural short cut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure a just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). Under Fed. R, Civ. P. 56(c), the movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleading depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. With or without supporting affidavits, the movant may meet its Rule 56 burden by pointing out to the court that the nonmovant "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322-23; Lujan v. National Wildlife Federation, 497 U.S. 871, 884-5 (1990).

Once the movant has met its Rule 56 burden, the burden shifts to the non-moving party to establish the existence of a genuine issue for trial. Matsushita Electric Industrial Co. v. Zenith

Radio Corp., 475 U.S. 574, 586-7 (1986). To meet its Rule 56 burden, the nonmovant must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

On summary judgment, the court must view the evidence in the light most favorable to the non-movant. Anderson, 477 U.S. at 255; Seamons v Snow, 206 F.3d 1021, 1026 (10th Cir. 2000); Curtis v Oklahoma City Public Sch. Bd. of Ed., 147 F.3d 1200, 1214 (10th Cir. 1998). However, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case. Bausman v Interstate Brands Corp., 252 F.3d 1111 (10th cir. 2001). If the nonmovant fails to show that there is genuine issue as to any material fact, the movant is entitled to summary judgment as a matter of law. Celotex, 477 U.S. at 322.

**DISCUSSION**

I. PLAINTIFF'S CLAIM OF DISCRIMINATION BASED ON RACE AND GENDER FOR FAILURE TO PROMOTE

Under the McDonnell Douglas three-step burden-shifting analysis, a plaintiff alleging a failure-to-promote claim must initially establish a prima facie case by demonstrating that: (1) she was a member of a protected class; (2) she applied for and was qualified for the position; (3) despite being qualified she was rejected; and (4) after she was rejected, the position was filled. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Jones v. Barnhart, 349 F.3d

5

1260, 1266 (10th Cir. 2003); Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1226 (10th Cir. 2000). If the plaintiff carries her burden of establishing a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment action. Garrett v. Hewlett-Packard Co., 305 F.3d 1210, 1216 (10th Cir. 2002). This shifts the burden back to the plaintiff to proffer evidence that the employer's reason is pretextual. Jones, 349 F.3d at 1266.

Defendant urges that Plaintiff cannot establish a prima facie case because she was not qualified for the position for which she applied in that she did not have the requisite experience and training. Plaintiff counters that the Court cannot consider Defendant's assertion in determining whether Plaintiff has made a prima facie showing because it improperly imports the pretext analysis into Plaintiff's prima facie case and eliminates Plaintiff's ability to make a prima facie showing.

The Tenth Circuit has held that an employer's subjective reasons are not properly considered at the prima facie stage because it prevents a plaintiff from establishing a prima facie case and short-circuit's a plaintiff's ability to establish that a defendant's proffered reasons for failing to promote are pretextual. Thomas v. Denny's, Inc., 111 F.3d 1506 (10th Cir. 1997) (citing Ellis v. United Airlines, Inc., 73 F.3d 999, 1005 n. 8 (10th Cir. 1996); York v. American Tel. & Tel. Co., 95 F.3d 948 (10th Cir. 1996); Kenworthy v. Conoco, Inc., 979 F.2d 1462, 1469-70 (10th Cir. 1992); MacDonald v. Eastern Wyoming Mental Health Ctr., 941 F.2d 1115 (10th Cir. 1991)). In Kenworthy, a defendant proffered that it had promoted a male employee over the female plaintiff because the male employee was more qualified for the promotion. 979 F.2d at 1469. The district court had determined that plaintiff had failed to make a prima facie showing of

discrimination because the male employee's qualifications for the promotion surpassed the plaintiff's qualifications. Id. The Tenth Circuit held that the district court erred in finding that the plaintiff had failed to make a prima facie showing of discrimination. Id. at 1470.

In MacDonald, the plaintiffs asserted that their discharge was the result of age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (ADEA). 941 F.2d at 1117. The defendant argued that the plaintiffs were discharged because of various behaviors that violated the defendant's policies and because of attitude and behavior problems. Id. The district court below found that the plaintiffs had failed to satisfy the second prong of their prima facie case by showing that they had performed their jobs satisfactorily because they failed to adequately rebut the evidence that they had violated defendant's policies and showed poor attitude and behavior.[1] Id. at 1119. The Tenth Circuit stated that the district court erred in considering the defendant's proffered reasons for discharge in assessing the existence of a prima facie case. Id.

In Ellis, plaintiffs alleged that the defendant failed to hire them for flight attendant positions based on age discrimination in violation of the ADEA. 73 F.3d at 1005. The defendant urged that the plaintiffs failed make a prima facie showing that they were qualified for the positions because they failed to show they met the weight standards defendant had in place for new hires into flight attendant positions.[2] Id. Alternatively, the defendant argued that its weight

---

[1] In a wrongful discharge case brought under the ADEA, a plaintiff makes a prima facie case for age discrimination by showing that 1) she is in a protected age group; 2) she was doing satisfactory work; 3) she was discharged; and 4) her position was filled by a younger person. MacDonald v. Eastern Wyoming Mental Health Ctr., 941 F.2d 1115, 1119 (10th Cir. 1991).

[2] In a failure to hire or promote case brought under the ADEA, a plaintiff establishes prima facie case of discrimination by showing that: (1) she was within protected age group; (2) she was

7

standards were a legitimate, non-discriminatory reason for failing to hire the plaintiffs.  Id.  On appeal, the plaintiffs argued that the weight standards could not properly be considered in determining whether they had established a prima facie case.  Id.  The Tenth Circuit expressed doubt that the plaintiffs had made a prima facie showing that they were qualified for the positions.  Id.  The court noted its prior holding in MacDonald that it was improper to consider an employer's explanation that it discharged the plaintiff because she was doing unsatisfactory work in assessing whether the plaintiff established a prima facie case.  Id. at 1005 n. 8.  The court then distinguished MacDonald by noting that the defendant's proffered reasons in that case had involved subjective employment criteria while the employment criteria offered by the Ellis defendant involved objective hiring criteria applied to all applicants.  Id.

In Thomas, the Tenth Circuit specifically noted that its holding that an employer's subjective reasons are not properly considered at the prima facie stage may not be applicable to a case involving objective hiring criteria applied to all applicants.  111 F.3d at 1510 n. 6.  The court expressly noted education and experience requirements as those type of objective qualifications that might properly be considered at the prima facie stage.  Id.

In this case, Plaintiff admitted in her deposition that she was not qualified for the position of Partsperson because she did not have the requisite six months experience as a warehouse person and had not taken the test for the Partsperson position.  While a plaintiff's burden of establishing a prima facie case is not an onerous one, Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981), there must be some showing that Plaintiff was qualified for

---

not hired; (3) she was qualified for position; and (4) defendant filled position with younger person. Ellis v. United Airlines, Inc., 73 F.3d 999, 1004 (10th Cir. 1996).

8

the position that she was denied. Defendant has objective qualifications for the position of Partsperson that are applied to all applicants. These objective qualifications are properly considered in determining whether Plaintiff has made a prima facie showing that she was qualified for the position of Partsperson. Because Plaintiff, by her own admission, did not meet these objective qualifications, she failed to make a prima facie showing of race or gender discrimination under Title VII.

Even if Plaintiff had succeeded in making a prima facie showing, she fails completely to rebut Defendant's proffered facially legitimate, non-discriminatory reason for failing to promote her to a position as Partsperson. As noted, Defendant's proffered reason for not promoting Plaintiff was her failure to qualify for the position. Additionally, the person ultimately hired for the position was qualified for the position.

In order to show pretext, a plaintiff is required to show that the defendant's tendered reason for the employment decision was not the genuine motivating reason, but rather was a disingenuous or sham reason. <u>Burn v. Bd. of County Com'rs of Jackson County</u>, 330 F.3d 1275, 1283 (10th Cir. 2003). Plaintiffs typically show pretext by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." <u>Jones v. Barnhart</u>, 349 F.3d 1260, 1266 (10th Cir. 2003).

Plaintiff has failed to show that Defendant's proffered legitimate reason for denying her the promotion to the Partsperson position was pretextual. None of Plaintiff's evidence would support a finding that Defendant's tendered reasons were disingenuous or sham reasons and

9

unworthy of belief.[3]  Therefore, Defendant is entitled to summary judgment on Plaintiff's claim to the extent she is alleging that Defendant violated Title VII when it failed to promote her to a Partsperson position.

II.   PLAINTIFF'S CLAIM OF DISCRIMINATION BASED ON RACE AND GENDER FOR FAILURE TO TRAIN

Plaintiff's Amended Complaint can be read to state a claim that Defendant discriminated against her on the basis of race and/or gender when it failed to provide her an opportunity to train for a Partsperson position.  Plaintiff's Charge of Discrimination filed with the EEOC and the New Mexico Human Rights Division (Charge) does not expressly allege discriminatory failure to train.  None of the factual allegations in the Charge of Discrimination complain of or implicate a failure to train.  The Charge of Discrimination alleges only that Defendant discriminated against Plaintiff when it failed to select her for the Partsperson position.

Defendant argues that Plaintiff's claim based on a theory of failure to train is barred because this claim is not reasonably related to the allegations in the Charge and Plaintiff failed to exhaust administrative remedies with regard to this claim.  Plaintiff concedes that her Charge did not specifically allege discrimination on the basis of a failure to train.  However, Plaintiff contends that her grievances filed with Defendant in May and September 2001 put Defendant on notice that

---

[3]The Court notes that Plaintiff believes that Defendant violated Title VII because it was required under the CBA to give a hiring preference to members of the Navajo Tribe.  Even if the CBA contains this requirement, a failure to abide by this contractual provision is not necessarily a violation of Title VII.  The Court considers this contractual provision only to the extent it might tend to show pretext.  Even considering this contractual provision along with all of Plaintiff's other evidence, and assuming the contractual provision applies to Plaintiff's work place, the evidence is insufficient to raise a genuine issue of material fact with regard to a discriminatory motive.

she would assert claims based on the failure to train. Plaintiff also argues that Defendant's failure to train her was a "continuing violation" to which the exhaustion rule does not apply.

It is undisputed that Title VII requires the exhaustion of administrative remedies. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 121 (2002). Morgan also makes clear that the continuing violation doctrine does not apply to claims of discriminatory or retaliatory actions by an employer. Id. at 113-115; see also Martinez v. Potter, 347 F.3d 1208 (10th Cir. 2003).[4] Before Morgan, the continuing violation doctrine was applied to save otherwise stale claims from dismissal on statute of limitations grounds. See e.g., Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1310 (10th Cir. 1999). In Morgan, the Supreme Court was dealing solely with a statute of limitations issue and whether the continuing violation doctrine could save a claim for which a timely EEOC charge had not been filed. 536 U.S. at 2069. The Court determined that each discrete act of discrimination occurs on the date it happens such that a plaintiff must file a charge with the EEOC within the prescribed time limit as measured from that date. Id. at 2070-71. Thus, the "continuing violation" doctrine can no longer operate to save a discrete claim that was not exhausted within the necessary time limits. To the extent that Plaintiff argues that her failure to train claim is not subject to dismissal based on the continuing violation doctrine, that argument is without merit.

While the continuing violation doctrine is no longer viable to avoid a statutory time bar, most circuits continue to recognize a related concept that considers exhausted any claims that are reasonably related to allegations in an EEOC charge so long as the charge was timely filed with

---

[4] Neither Plaintiff nor Defendant cited Martinez v. Potter in any of the pleadings filed in this case.

11

regard to the reasonably related claims. See e.g., Gregory v. Georgia Dept. of Human Resources, 355 F.3d 1277 (11th Cir. 2004); Vasquez v. County of Los Angeles, 349 F.3d 634 (9th Cir. 2003); Sitar v. Indiana Dept. of Transp., 344 F.3d 720 (7th Cir. 2003); Terry v. Ashcroft, 336 F.3d 128 (2nd Cir. 2003); Faibisch v. Univ. of Minn., 304 F.3d 797 (8th Cir. 2002); Weigel v. Baptist Hosp. of East Tenn., 302 F.3d 367 (6th Cir. 2002). These circuits recognize that many persons who file EEOC charges are not represented by counsel and are legally unsophisticated such that an EEOC charge should be read liberally to encompass not only those claims expressly stated but also those timely claims that are reasonably related to the allegations in the EEOC charge. See e.g., Deravin v. Kerik, 335 F.3d 195, 200-01 (2nd Cir. 2003) (noting that the exception to the exhaustion requirement for reasonably related claims "is essentially an allowance of loose pleading," and is based on the recognition that EEOC charges are often filed by unrepresented persons). None of these circuits has indicated a perception that the Supreme Court holding in Morgan affects the scope of an EEOC charge to encompass timely, reasonably related claims.

The Tenth Circuit recently issued an opinion that could be read as implying that, in light of the Supreme Court's holding in Morgan, an EEOC charge exhausts only those claims expressly raised in the charge and does not exhaust reasonably related claims regardless whether they are timely. In Martinez v. Potter, the Tenth Circuit held that discrete claims based on incidents occurring after the filing of an EEOC charge must be separately exhausted by the filing of a new EEOC charge and are not properly before a court based on the original EEOC charge. 347 F.3d 1208, 1210-11 (10th Cir. 2003). The plaintiff in Martinez had filed a charge with the Postal Service EEO office alleging retaliatory treatment occurring in May 1999. Id. at 1210. His

12

subsequent judicial complaint alleged retaliatory treatment charged in the EEO charge and retaliatory treatment allegedly occurring after the EEO charge was filed.  Id.

The district court below had determined that the plaintiff failed to exhaust administrative remedies with regard to the alleged incidents of retaliation occurring after the EEO charge was filed because those incidents were not like or reasonably related to the allegations in the EEOC charge.  Id.  The Tenth Circuit agreed with the district court that the claims of subsequent retaliation were not properly before it, but reasoned that the Supreme Court holding in Morgan necessitated this result.  Martinez, 347 F.3d at 1210.  In reaching this conclusion, the Tenth Circuit stated that Morgan had "effected fundamental changes to the doctrine allowing administratively unexhausted claims in Title VII actions."  Martinez, 347 F.3d at 1210.  The doctrine that the Tenth Circuit refers to is the continuing violation doctrine.  Id.  While recognizing that Morgan dealt with unexhausted claims when the incidents giving rise to those claims occurred more than 300 days prior to the filing of an EEOC charge, the Tenth Circuit stated that the rule in Morgan was equally applicable to discrete claims based on incidents that occurred after the filing of an EEOC charge.  Id. at 1210-11.  In referencing its previous cases allowing a judicial complaint to encompass claims like or reasonably related to incidents listed in an EEOC charge, the Tenth Circuit seems to equate the continuing violation doctrine with the allowance of reasonably related claims.  Id. at 1210.  Thus, the opinion could be read to imply that the abrogation of the continuing violation doctrine also abrogates the allowance of claims reasonably related to the allegations in an EEOC charge.

In Martinez, the Tenth Circuit did not have before it whether claims arising from discrete incidents that occur within 300 days prior to the filing of an EEOC charge may be included in a

judicial complaint when those claims are like or reasonably related to the allegations in the EEOC charge. While Martinez can be read as implying that such claims must be expressly included in an EEOC charge in order to be exhausted, it is not a necessary holding of the case. Thus, it is not clear whether the Tenth Circuit would allow that claims arising within 300 days prior to the filing of an EEOC charge that are reasonably related to the allegations in the charge but are not expressly delineated therein are exhausted. The Supreme Court in Morgan, concerned with stale claims, abrogated the use of the continuing violation doctrine to avoid the statute of limitations for Title VII claims. In contrast, the allowance of reasonably related claims is based on the recognition that many persons filing EEOC charges are acting without the assistance of counsel such that the EEOC charge should be liberally construed as encompassing reasonably related claims. In light of this, I do not read Martinez as holding that claims reasonably related to the allegations in an EEOC charge may not be raised in a judicial complaint unless these claims were expressly listed in the EEOC charge. Therefore, I will proceed to determine whether Plaintiff's failure to train claim is reasonably related to the failure to promote allegations in her EEOC charge such that the EEOC charge can be construed as encompassing the failure to train claim for purposes of exhaustion.

The purpose of Title VII's exhaustion requirement is to provide notice to the employer of the charged violation and to provide the EEOC the first opportunity to investigate the charge and attempt voluntary compliance and conciliation. Jones v. Denver Post Corp., 203 F.3d 748, 755 (10th Cir. 2000); Gregory v. Georgia Dept. of Human Resources, 355 F.3d 1277, 1279 (11th Cir. 2004). With regard to an EEOC charge, claims of discrimination that fall within the scope of an actual EEOC investigation of the charge or an EEOC investigation that could reasonably be

14

expected to grow out of the charge are within the scope of the EEOC charge for purposes of exhaustion. Deravin v. Kerik, 335 F.3d 195, 200-01 (2nd Cir. 2003); Vasquez v. County of Los Angeles, 349 F.3d 634, 644 (9th Cir. 2003). If a claim amplifies, clarifies or more clearly focuses the allegations in the EEOC charge, it is reasonably related to the EEOC charge. Gregory, 355 F.3d at 1279. Allegations of a different type of discrimination are not reasonably related to those in an EEOC charge unless the allegations supporting the new type of discrimination can be inferred from the facts contained in the EEOC charge. Ajayi v. Aramark Bus. Serv., Inc., 336 F.3d 520, 527 (7th Cir. 2003). Claims that involve a separate set of incidents and conduct than the allegations in an EEOC charge are generally not reasonably related to the EEOC charge. Sitar v. Indiana Dept. of Transp., 344 F.3d 720, 726 (7th Cir. 2003). In determining whether a claim is reasonably related to the allegations in an EEOC charge, a court may consider "such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred." Vasquez, 349 F.3d at 644.

In Jones, the plaintiff's EEOC charge had alleged a single incident of a failure to promote occurring on a specified date. 203 F.3d at 755. The plaintiff's judicial complaint included a claim for the employer's failure to promote her on an occasion preceding the incident alleged in the EEOC charge. Id. The Tenth Circuit found that the claim for failure to promote that was not based on the allegations in the EEOC charge was not reasonably related to the EEOC charge. Id.

Similar to the EEOC charge in Jones, Plaintiff's Charge of Discrimination specifies that an incident of discrimination occurred on one specific date, September 20, 2001. The factual allegations in Plaintiff's Charge are all specific to the particular incident in which the Defendant

15

failed to hire Plaintiff for the Partsperson position. None of the allegations in the Charge mentions events occurring prior to Defendant's failure to hire her for the Partsperson position, and none of the allegations relate to any incident other than the specified incident. The failure to train claim relies on incidents that occurred prior to the specific date alleged in the Charge. The failure to train claim is based on Plaintiff's alleged requests for training and Defendant's alleged denial of these requests while simultaneously providing training opportunities to others. These factual allegations that form the basis of the failure to train claim would not reasonably be inferred from the factual allegations in Plaintiff's Charge. Nor would an EEOC investigation of this failure to train claim have been reasonably expected to grow out of an investigation into Plaintiff's Charge. Thus, Plaintiff's failure to train claim is not reasonably related to the claims raised in her Charge, Plaintiff did not exhaust her administrative remedies with regard to her failure to train claim, and Defendant is entitled to dismissal of the failure to train claim based on Plaintiff's failure to exhaust.

III. PLAINTIFF'S CLAIM FOR HOSTILE AND INTIMIDATING ENVIRONMENT HARASSMENT

Plaintiff's Amended Complaint lists hostile and intimidating work environment as a basis for her discrimination claim. Plaintiff's Amended Complaint makes some factual allegations that could be read as an attempt to state a claim for hostile environment sexual harassment. She alleges that a supervisor recommended she see a doctor because she was upset over not being given training opportunities for promotion. She alleges that a supervisor harassed her and criticized her work on an occasion when she was given a training opportunity. She alleges that a person by the name of Eugene Gorman at the Union Hall told her that a person named Shruman

told him that a coal plant operator position was not for a woman because of the physical maintenance skills required for the position.[5] Plaintiff further alleges that Gorman never filed a grievance that Plaintiff requested.

Plaintiff's Amended Complaint alleges that a she opposed a supervisor's harassment of another employee and was yelled at by the supervisor. Plaintiff left work after the supervisor yelled at her. The following day, Shruman spoke with Plaintiff about leaving work the previous day. Plaintiff requested a union representative be present during the meeting. Plaintiff met with Eugene Gorman at Union Hall regarding the incident. Gorman asked what was wrong with Plaintiff's husband - if his woman had been yelled at he would be looking for the guy. Plaintiff asked Gorman to file another grievance, and Gorman failed to do so.

Defendant's Motion for Summary Judgment argues that Plaintiff's hostile and intimidating work environment claim is outside the scope of her EEOC charge of discrimination and is thus barred for Plaintiff's failure to exhaust administrative remedies with regard to such a claim. Defendant's motion further urges that there is no evidence to support the claim. Plaintiff's response to Defendant's motion sets out no allegations of fact that would support a claim for hostile environment discrimination, provides no evidence that would create a genuine issue of material fact with regard to a claim for hostile intimidating work environment discrimination, and makes no argument that this claim should survive summary judgment. Finally, as previously

---

[5]It is unclear from the substance of the allegations in the Amended Complaint who either Eugene Gorman or Shruman are. While the substance of the allegations suggest that Shruman is an employee of Defendant in a supervisory or managerial position, it is unclear whether Gorman is an employee of Defendant, the Union, or has some other relationship to a party in this case.

noted, Plaintiff's Charge of Discrimination makes no mention of a hostile environment claim and contains no allegations regarding a hostile environment.

For the same reasons that Plaintiff's Charge did not exhaust her failure to train claim, it did not exhaust her hostile intimidating work environment claim. The Charge specifies an incident of discrimination occurring on a specific date. The factual allegations in the Charge are particular to the specified incident in which the Defendant failed to hire Plaintiff for the Partsperson position. The hostile intimidating work environment claim relies on incidents that occurred at time other than the specific date alleged in the Charge. The hostile intimidating work environment claim is based on alleged incidents described above from the Amended Complaint, and these allegations would not reasonably be inferred from the factual allegations in Plaintiff's Charge of Discrimination. Nor would an EEOC investigation of this hostile intimidating work environment claim have been reasonably expected to grow out of an investigation into Plaintiff's Charge. Thus, Plaintiff's hostile intimidating work environment claim is not reasonably related to the claims raised in her Charge, Plaintiff did not exhaust her administrative remedies with regard to her hostile intimidating work environment claim, and Defendant is entitled to dismissal of the hostile intimidating work environment claim based on Plaintiff's failure to exhaust.

Even if Plaintiff had exhausted her administrative remedies with regard to her hostile intimidating work environment claim, Defendant would be entitled to summary judgment on the claim based on Plaintiff's failure to meet her burden under Fed. R. Civ. P. 56 to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324.

**CONCLUSION**

For the reasons set forth in this Memorandum Opinion and Order, Defendant's Motion for Summary Judgment [Docket No. 29] is hereby GRANTED.

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE